Joseph COHEN
v.
The UNITED STATES.

John V. COUGHLIN
v.
The UNITED STATES.

David M. GOODMAN
v.
The UNITED STATES.
Nos. 5–62 to 7–62.

United States Court of Claims.
Dec. 16, 1966.

James E. Murray, Washington, D. C., for plaintiffs; John J. Ross, Washington, D. C., attorney of record; Hogan & Hartson, Washington, D. C., of counsel.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

## OPINION

COLLINS, Judge:

These are three separate suits brought by former customs inspectors of the United States Customs Service, alleging illegal suspension and discharge from the Customs Service, based upon violation of their rights under the Veterans' Preference Act.[1] Recovery is sought for back pay from the time of their suspension. The actions were consolidated by order of this court under former Rule 38(a) (now Rule 47(a)). Joint trial proceedings followed, and findings of fact based thereon have been submitted by the commissioner. Those findings, subject to

1. Chapter 287, § 14, 58 Stat. 390, amended by ch. 447, 61 Stat. 723, 5 U.S.C. § 863 (1964).

certain additions, have been adopted by the court and are set forth infra. We conclude, upon evaluation of the record in its entirety, that plaintiffs are not entitled to recover.

The factual background reveals that plaintiffs' dismissals were based upon their failure to have conducted proper baggage examinations which, in each instance, permitted the introduction of contraband merchandise into the United States. As a common factual element, the claims bring into focus the smuggling activities of one Domenico Guarna, an importer, whose illegal trafficking was sustained, in part, by the negligence of the present plaintiffs. The claims relate to separate and independent transactions.

Under surveillance at the time of his arrival at the Port of New York on October 1, 1957, Guarna, after clearance through customs, was approached by a customs agent who requested a further look at the importer's luggage. This examination revealed the existence of dutiable merchandise which Guarna had failed to declare and which the customs inspector had failed to discover. Guarna was arrested at that point. He submitted to questioning and permitted a search of his business premises. The evidence thereby obtained, studied in conjunction with his prior activities, led to the disclosure of a smuggling conspiracy and eventually to Guarna's criminal prosecution and conviction.

Alerted to the possibility of wholesale misconduct among its inspectors, the Customs Bureau commenced an investigation which involved 20 customs inspectors. Of these, a number, including plaintiffs, were removed from their positions. The particulars of each claim involved herein are as follows. We deal first with plaintiff Cohen.

## Joseph Cohen

The facts elicited from Guarna, when first questioned on October 1, 1957, disclosed his illegal liaison with one William Lev, a customs inspector, whose unlawful actions had, in conjunction with those of other inspectors, facilitated Guarna's smuggling during the prior 2 years. Among the incidents to which Guarna had referred was his arrival at the Port of New York on September 25, 1956. He acknowledged that on this occasion a bribe was subsequently paid to an Inspector Mandel for permitting the passage of contraband merchandise through customs, this passage being assured through an arrangement previously worked out between Lev and the inspector who conducted the baggage check. A subsequent check of prior records disclosed that Guarna's baggage examination of September 25, 1956, had actually been performed by plaintiff Cohen. It further revealed that Guarna had arrived on this date with five trunks and six other pieces of baggage and that as articles declared he had listed "silk swatches of no commercial value" with a fair value of $50, on which $9.75 duty was paid. As revealed by the baggage declaration, three of these pieces were examined—this minimum number being in apparent compliance with the "spot check" system that had been ordered for the day in question.[2] However, the true contents of Guarna's baggage, as determined by reference to his office records, which were examined on October 1, 1957, revealed undeclared merchandise valued at approximately $22,693 on which an approximate duty of $8,658 should have been paid.

On October 11, 1957, plaintiff Cohen was questioned. He denied, in a sworn statement, that he knew Guarna; he indicated that he had no recollection of

2. The Customs Bureau followed two basic inspection procedures. The so-called "spot check" refers, as its name implies, to a method of inspection which does not include all of an incoming passenger's baggage. Under this procedure, a customs inspector is required to exercise his discretion and to check into a representative sampling of baggage. Under the second method of examination, each piece of luggage must be opened and, if circumstances warrant, be further examined. This latter method is the 100-percent-examination method.

having greeted Guarna at the time of the latter's arrival on October 1, 1957, although he could not say with certainty that in the course of his daily work he had not shaken hands with an individual who might perhaps have been Guarna. No immediate action was taken against Cohen, although the agency was apparently then in possession of information, based upon observations of agents of the Bureau of Customs, that Cohen had approached Guarna on October 1, 1957, had greeted him in a friendly manner, and had engaged him in a short conversation. However, on November 5, 1957, the agency did prefer charges, which, as set forth in a letter forwarded to Cohen by the Commissioner of Customs, proposed plaintiff's removal on two grounds. First, it charged—

> * * * misconduct in that on September 25, 1956, you were assigned to baggage examination duty on the arrival of the SS Cristoforo Colombo. Domenico Guarna, a passenger on the SS Cristoforo Colombo on September 25, 1956, had arranged with Inspector Lev for his baggage to be cleared without the payment of duty on the merchandise. He was introduced to you by Inspector Lev, and Lev told him that you would clear his baggage. Mrs. Domenico Guarna and Mr. Rodolfo Nocita were present. You cleared and passed 13 pieces of baggage on dutiable declaration number 24577 filed by Domenico Guarna as a returning resident on September 25, 1956. The baggage declaration shows you examined 3 pieces of baggage. Merchandise valued at $130 was declared by Guarna and duty assessed in the sum of $9.75 on silk swatches declared at $50. A spot check of baggage was ordered for this vessel. Guarna's baggage on this arrival contained undeclared merchandise valued at approximately $22,693 on which approximate duty would be $8,658. Your failure to properly examine Guarna's baggage on September 25, 1956, led to the illegal introduction of this merchandise into the United States and loss of revenue approximating $8,658.

Secondly, the letter charged Cohen with making—

> * * * a false statement under oath in the office of the supervising customs agent at New York on October 11, 1957, when you stated that you did not know Domenico Guarna. On October 1, 1957, when Guarna arrived at New York you greeted him with a handshake and spoken greeting, in a very friendly manner, on pier 84, N.R., as observed by Customs Agents McVeigh and Huffman.

The letter advised Cohen that it was a notification of proposed adverse action, undertaken in accordance with section 14 of the Veterans' Preference Act of 1944. It further advised that said act's provision regarding "at least 30 days' advance written notice" was not applicable because there existed reasonable grounds to believe that Cohen was guilty of a crime for which a sentence of punishment could be imposed. Cohen was granted 24 hours in which to respond to his proposed suspension and a 5-day period in which to respond formally to the charges against him.

His denial of the charges was followed by a personal appearance before the Acting Commissioner of Customs in Washington, D. C., on November 12, 1957. This office sustained the charges and advised Cohen of his removal, effective as of December 8, 1957; an appeal to the Civil Service Commission followed. However, due to the pendency of criminal proceedings that had been undertaken in connection with the smuggling activities at the Port of New York, Cohen's appeal was held in abeyance at the request of the United States Attorney for the Southern District of New York. In this connection, it is noted that these criminal proceedings also included Cohen, his indictment resting upon the grounds heretofore mentioned, i. e., alleged complicity in a smuggling conspiracy between Guarna and Customs Bureau employees. Though this indictment was

subsequently quashed on October 27, 1959, Cohen's appeal before the Civil Service Commission was not heard until September 25, 1960.

In affirming plaintiff Cohen's suspension and removal, the Civil Service Commission rested, in substance, on the grounds set forth in the charges initially invoked, i. e., an improper examination and a false denial of knowing Guarna. The decision, dated November 3, 1960, reads, in pertinent part, as follows:

* * * It is the further opinion of this office that it is no answer to the charge for the appellant to refer to the spot check order, state merely that he examined about 25% of Guarna's luggage and that he had thereby satisfied his responsibilities. As a Customs Inspector, his responsibility was more extensive than the examination of 1, 2, or 6 pieces out of a larger amount of luggage. According to his task statement and position description, one of his "primary duties" was the enforcement of laws governing the importation of merchandise and he had constantly to observe the unusual condition of goods indicative of attempts to violate the laws. Any reasonable man, other than a Custom Inspector, with a modicum of curiosity would, on the basis of the information available on September 25, have been constrained to inquire (and examine) into the contents of at least one of the several large steamer-type trunks carried by Guarna. The available information was cogent and compelling. Guarna was carrying a large amount of luggage after a brief sojourn abroad; he acknowledged on the declaration that he had in his possession articles for sale or sample which were dutiable; and of particular significance was the fact that his luggage contained 5 large trunks conspicuously marked in a manner used by commercial travelers for cargo. These factors demanded that a law enforcement officer of nine years' experience, responsible for detecting smuggling, make a further examina-

tion. The appellant's failure to do so, in the premises, constituted misconduct. * * *

With respect to Cohen's relationship with Guarna, the decision stated:

* * * The evidence indicates that after examining Guarna's luggage in September, 1956 the appellant, 13 months later, was working in an area immediately adjoining the area where Guarna was present. There is substantial and creditable testimony that the appellant shook Guarna's hand and spoke with him. Significantly, this evidence establishes that it was the appellant who approached Guarna. This was not, in the opinion of this office, an innocuous meeting of an unknown passenger. Accordingly, when the appellant just ten days later stated that he did not know Guarna, it is considered that he made a false statement, as charged.

It is noted that the smuggling activities of Guarna and others resulted in a criminal prosecution. In the criminal action, three counts against the appellant were, on motion by his attorney, dismissed by the Trial Judge. This action in respect to criminal responsibility does not absolve the appellant of the charges made against him in this administrative proceeding. It is the conclusion of this office that, for the reasons previously stated, appellant was properly charged with misconduct on the basis of his baggage examination of September 25, 1956 and that he made a false statement, as charged. Under the circumstances, the Bureau's action in imposing a suspension in view of the emergency nature of the case was proper and its further action in separating the appellant on the basis of the two sustained charges was a reasonable corrective action, which is deemed to promote the efficiency of the Federal service.

This decision was reviewed and sustained by the Civil Service Commission Board of Appeals and Review. De novo proceedings in this court followed.

### John V. Coughlin

With respect to plaintiff Coughlin, the record discloses that his removal resulted from an improper examination of Guarna's baggage on October 1, 1957, this being the incident, which, as previously related, had led to Guarna's arrest. Although a 100-percent-baggage examination was required on this date, it is conceded that Coughlin violated this requirement. The baggage declaration indicated that 17 pieces of Guarna's luggage had been examined—in actuality, only 4 pieces had been examined. Subsequent examination of Guarna's baggage revealed undeclared merchandise in excess of $50,000.

On October 4, 1957, Coughlin was advised by telegram through the Acting Commissioner of Customs that his suspension without pay for 30 days was proposed; he was granted 24 hours in which to respond to the gross negligence charge that had been lodged against him. On October 7, 1957, he was advised that he had been suspended without pay for 30 days. On November 5, 1957, the Commissioner of Customs brought a formal charge against Coughlin, setting forth the following facts:

> You are charged with misconduct in that on October 1, 1957, you were assigned to baggage examination duty on the arrival of the SS Cristoforo Colombo. Inspector William Lev made arrangements with you for the clearance of the baggage of Domenico Guarna, a passenger arriving on the SS Cristoforo Colombo on October 1, 1957. Inspector Lev introduced Guarna to you and told him you would clear his baggage. You subsequently expedited the clearance of Guarna's baggage without the proper inspection and proper collection of duty.

> You attested falsely on Domenico Guarna's baggage declaration filed in connection with his arrival on October 1, 1957, that you examined 17 pieces of baggage belonging to Guarna. You examined only 4 pieces of Guarna's baggage. One hundred percent baggage inspection was ordered by the collector of customs for the arrival of the SS Cristoforo Colombo on October 1, 1957. The baggage you did not examine contained merchandise valued in excess of $50,000.

Plaintiff, in response to these charges, admitted the lack of thoroughness in his examination, but pleaded in mitigation that the dereliction was induced through Lev's deception rather than through any criminal intent on his own part. This was followed by a second proposed 30-day suspension. A personal hearing was had before the Commissioner of Customs, who, upon further consideration of the matter, concluded that plaintiff Coughlin should be removed from his position. Said removal became effective on December 8, 1957. This decision was upheld by the Civil Service Commission following a delayed hearing on August 22, 1960. It was likewise sustained by the Civil Service Commission Board of Appeals and Review. The Civil Service Commission's opinion, dated September 13, 1960, reads in pertinent part as follows:

> The following conclusions are reached after analysis of all of the evidence in the record: Actually, little, if any, issue is taken by the appellant with respect to the statements set forth under the general charge. He acknowledges that on October 1, 1957, during a required examination of Guarna's luggage, he opened or had opened four pieces and that he glanced into or felt into the open pieces of luggage. On this date, it was required, as an absolute minimum, that all of the baggage of passengers be opened. The appellant acknowledges failing to open over 75% of Guarna's baggage which included seven large trunks. His direct and personal responsibility was not relieved by Lev's statements and his faith in the latter. It is the opinion of this office that the appellant was derelict and failed, as charged, to conduct a proper inspection, as required. His attempt to gloss-over this dereliction with the statement that he was merely careless is not satisfactory.

The record further establishes that the unexamined baggage contained merchandise in excess of $41,000 requiring duty over $9,000 whereas Guarna paid but $22.50. The improper examination was the proximate cause of the appellant's failure to collect proper duty. In respect to this, it is significant that no explanation is offered by the appellant for the false entries he made on Guarna's declaration. Of course, it could not reasonably be argued that the erroneous information on the declaration was the result of carelessness since it was required that the appellant, among other things, state the number of pieces of baggage examined, the hour and date of his examination and place his signature and badge number on the form.

As to the appellant's arguments that his separation was based upon the commission of a crime, for which he was not indicted, as shown by the comments in Mr. Strubinger's statement, these are not concurred in by this office. The contents of the latter statement, commenting upon the evidence of record, seek, in effect, to show that the appellant's actions on October 1, 1957 were, at the least, grossly negligent, if not purposeful. They properly seek, in effect, to rebut the appellant's contentions that his actions were merely careless. They do not establish that the appellant was separated because of the commission of a crime for which he was not indicted.

It is the opinion of this office that the overall charge of misconduct, based upon an improper examination and collection of duty and a false statement, is sustained. It is the further opinion of this office that the appellant's separation for such cause was a reasonable corrective action which promotes the efficiency of the Federal service. It is also concluded that the appellant's emergency suspension during the period of advance notice was warranted, under the circumstances, and is sustained by the evidence of record.

As in the case of plaintiff Cohen, Coughlin received the benefit of de novo proceedings in this court.

### David M. Goodman

As to the remaining plaintiff, Goodman, his dismissal was predicated upon charges of misconduct arising out of a baggage examination conducted on October 15, 1956, in connection with the arrival of one Carlo Parlato, a business associate of Domenico Guarna. As was the case with plaintiff Cohen, the charge against Goodman related to an incident that had occurred many months prior and was not disclosed until Guarna was arrested on October 1, 1957. From Guarna's statements, it was learned that dutiable merchandise had been passed through customs without detection on October 15, 1956. It was further ascertained that plaintiff Goodman had conducted the inspection, the baggage declaration indicating that he had examined, in compliance with the 100-percent examination required on this date, the 19 pieces of baggage that accompanied Parlato.

A search of Guarna's office yielded, among other things, a truckman's bill indicating the transportation of eight trunks and eight suitcases, on October 15, 1956, from Pier 84 (Parlato's arrival point) to Guarna's office. In addition, several trunks were seized which bore customs stamps that had been issued to Goodman for his use on October 15, 1956. Invoices uncovered in Guarna's office and subsequently identified by him established that the value of the undeclared merchandise was approximately $16,000, representing an approximate duty value of $5,000.

Plaintiff Goodman was informed by letter, on November 5, 1957, that he would be suspended without pay for 30 days, the suspension to be effective within 24 hours. He was allowed 5 days within which to respond. The charges read, in pertinent part, as follows:

\* \* \* Inspector Lev met Parlato and Guarna on the pier and introduced them to you, and told them that you

would clear Parlato's baggage. Mr. Rodolfo Nocita was present.

You cleared and passed 19 pieces of baggage on dutiable baggage declaration number 30349 filed by Carlo Parlato as a nonresident on October 15, 1956. The baggage declaration shows you examined 19 pieces of baggage. Parlato declared articles valued at $159.60. Duty was assessed on sample shoes and slippers in the sum of $19.80. One hundred percent baggage examination was ordered for this arrival. Parlato's baggage on this arrival contained undeclared merchandise valued at approximately $16,309, on which the approximate duty would be $5,305. Your failure to properly examine Parlato's baggage on October 15, 1956, led to the illegal introduction of this merchandise into the United States and loss of revenue approximating $5,305.

Goodman's reply of November 7, 1957, denied any acquaintanceship with or introduction to either Guarna or Parlato and further denied any impropriety in the inspection performed.

On November 8, 1957, plaintiff Goodman was notified by telegram of his suspension. This was followed by a personal appearance before the Assistant Commissioner of Customs in Washington, D. C., at which time Goodman again disavowed any inadequacy in the performance of his duties. A final decision was reached on December 5, 1957, at which time Goodman was advised, by letter, that his removal from the Customs Bureau would become effective on December 8, 1957. An appeal to the Civil Service Commission followed.

As was the case with plaintiffs Cohen and Coughlin, this appeal by Goodman was held in abeyance pending the disposition of criminal proceedings relating to Guarna's smuggling activities. It should be noted, however, that, unlike Cohen, no indictment was returned either against Coughlin or Goodman.

Goodman's appeal was heard on October 5, 1960, and his dismissal affirmed by a decision rendered on December 27, 1960. This decision rested entirely on the conclusion that if, as Goodman had contended, all of Parlato's luggage had been checked, then the undeclared merchandise could not have escaped detection.

The appeals officer's decision read, in pertinent part, as follows:

Based upon all of the record evidence and hearing testimony, summarized above, the following conclusions are reached by this office: After receiving Parlato's declaration on October 15, 1956, there was a plethora of evidence confronting the appellant which warranted extreme caution on his part in the examination he was about to undertake. Parlato was a non-resident and was entering the United States on a trade or merchant visa. His declaration informed the appellant that he was carrying certain commercial goods. Obviously, Parlato was no vacationer or pleasure traveller. Significantly, the value of the commercial goods he actually declared was comparatively small; nevertheless, he was accompanied by a large amount of baggage almost one-half of which were large trunks. At least one of these trunks was prominently stamped or marked similar to commercial cargoes. The required formal questioning of Parlato by the appellant was impossible since neither spoke or understood the language of the other at the time. In this setting, any individual, Inspector or otherwise, whose primary responsibility was the enforcement of Customs laws and the thwarting of smuggling, would be most circumspect.

Appellant denies the charge, insists that in this examination, as in all others, all requirements were complied with and, by reference to the declaration which he signed, claims that he examined 19 pieces of baggage as required by the order of the day. His statements are completely unacceptable. Parlato's baggage was, to put it bluntly, "loaded". It contained in excess of 7,400 pieces of undeclared mer-

chandise. Apart from Parlato's personal luggage, this meant that, if evenly distributed, there were almost 600 pieces of contraband in each of the remaining pieces of baggage. Under the existing circumstances, which demanded vigilance, if not suspicion, it is inconceivable that a proper baggage examination was conducted. When considered from any possible viewpoint, there is no other conclusion but that the examination, as charged, was improper: If Parlato's baggage was opened it was not examined; or, if examined, the appellant failed to detect or ignored what was obvious and patent.

It is noted that prior to the letter of charges, evidence with respect to the activities of Guarna and others, including the appellant, was presented to the United States Attorney. The Bureau was advised by the latter that criminal proceedings would be instituted. Subsequently, the Grand Jury failed to issue an indictment against the appellant. This failure to indict in a criminal action does not absolve the appellant of responsibility for his actions (or inaction) in an administrative proceeding. It is the conclusion of this office that for the reasons previously stated, appellant was properly charged with misconduct for failing to examine properly Parlato's baggage which contained undeclared merchandise in excess of $16,000, dutiable in excess of $5,300; further, that the Bureau's action in imposing a suspension during the notice period because of the emergency nature of the case was proper. Furthermore, its action in separating the appellant from his position on the basis of the sustained charge was a reasonable corrective action which is deemed to promote the efficiency of the Federal Service.

This view was upheld by the Civil Service Commission Board of Appeals and Review, which, on June 22, 1961, affirmed plaintiff's suspension and removal. Thereafter, proceedings were commenced in this court.

### DISCUSSION

In challenging the procedures which resulted in their dismissals, plaintiffs raise a number of issues. And though the matters presented for consideration are not, in every instance, a common factor, i. e., identical issues are not presented within the context of each of the several cases, the conclusion we reach obviates the need for separate treatment.[3]

The main thrust of the argument presented to us is directed towards the hearing held before the Civil Service Commission. This, it is claimed, must be invalidated for lack of due process. Specifically, the argument embraces the following contentions—that, despite a timely request therefor, the witnesses whose statements were relied upon by the Bureau of Customs were not produced for cross-examination; that documentary evidence submitted by the Customs Bureau contained deletions which resulted in omissions prejudicial to plaintiffs; that unsworn statements were relied upon, which, together with material taken from criminal proceedings, denied a fair hearing; that the long delay in the hearing itself rendered the ultimate outcome defective; and, finally, that the sanction applied, i. e., removal, was an unduly harsh and arbitrary action.

■■ We direct our attention first to the claim that the absence of request-

---

3. After close of oral argument, defendant moved to amend its pleadings so as to set out a defense that plaintiffs Cohen and Coughlin had failed to exhaust their administrative remedies. Since this motion would appear to raise certain legal questions, beyond the more limited matter of whether there was an actual waiver of defenses at the administrative level, additional briefs on these points would seem to be indicated. Rather than further protract this already long-delayed litigation, we elect to deny defendant's motion and to treat the arguments on the merits. Disposition of the case on this basis does not result in prejudice to defendant's position, since we conclude, as indicated, that plaintiffs are not entitled to recover.

ed witnesses compels invalidation of plaintiffs' dismissals. Reliance is placed upon Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 10 L.Ed.2d 136, petition for rehearing granted, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), and this court's decision in Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965). Read conjunctively, the cited authorities may be regarded as establishing the general rule governing the attendance of witnesses and the exception thereto. This rule, as phrased by the Supreme Court and as applied by this court, places upon a petitioner the initial burden to make a timely and sufficient attempt to secure on his own, i. e., through private arrangements, the attendance of those witnesses whose testimony or cross-examination is deemed by him to be vital to the presentation of the case. No such attempt was made in this case; instead, the request for witnesses was directed to the New York Office of the Bureau of Customs, the employing agency. Under normal circumstances, this could not be considered a fulfillment or discharge of a petitioner's obligation to make private arrangements for his witnesses. Begendorf v. United States, 340 F.2d 362, 169 Ct.Cl. 293 (1965). However, it is argued that such an attempt would, in this instance, have proven fruitless, for it is claimed that the employing agency would have barred the attendance of any witnesses that might have been personally requested to appear. On the basis of this allegation, it is claimed that the rationale of Hanifan, supra, a case in which we recognized an exception to the initial burden principle, becomes fully applicable.

While this argument is undoubtedly correct from the legal standpoint, the factual inaccuracy upon which it is premised requires its rejection. There is nothing in the record to support the contention that the employing agency would have prevented the attendance of any witnesses had they been personally contacted. The agency's failure to respond, in the first instance, cannot be taken as a basis from which to infer this conclu-

sion. Nor do we find here present any of the factors that prompted our result in *Hanifan*. There has been no showing that the requested witnesses were the petitioners' principal adversaries, or that they had submitted briefs in rebuttal to the petitioners' testimony, or more importantly, that the witnesses were aware that their presence had been sought. Rather, the testimony developed in this court shows that had such a personal request been made, the witnesses sought (and who testified here) would have been available. Under such circumstances, the lack of witnesses cannot be regarded as a denial of due process. The duty of arrangement for witnesses was in no sense hampered by the agency; it simply refused to do for the petitioners what they were legally required to do themselves. We therefore find no merit in the claim that has been made.

■■ It is further argued that the documentary evidence presented to the Civil Service Commission contained deletions and that these deletions resulted in the withholding of evidence essential to a fair presentation of the cases.

In this regard, the trial commissioner found that the deleted evidence did not result in prejudice to the petitioners and, with that conclusion, we agree. Much of the material deleted was either repetitious or concerned facts having no bearing upon the individual case. See findings 17, 27, and 39. Moreover, in the case of both plaintiff Cohen and plaintiff Goodman, the deletion resulted in the *exclusion* of evidence which tended to show that both had been bribed. Since the charge propounded against these particular plaintiffs did *not* allege that either had received money in return for improper inspections, we cannot perceive what relevance the inclusion of this data would have had; still less do we perceive how the omission of such material could possibly have resulted in prejudice. As to the claim that a fair hearing demands the presentation of *all* data, this is a position we are not willing to endorse. We know of no requirement that would compel an employing agency to put before

the Civil Service Commission everything in its files, without consideration of relevancy. Indeed, were it to do so, removal decisions would be subject to invalidation on the ground that the decisions rested in part upon irrelevant or prejudicial evidence totally unrelated to the charges made. So anomalous a result need not be reached. It must be emphasized that plaintiffs were at all times aware of the evidence upon which the Civil Service Commission based its decisions. There was no secret evidence. And, in this respect, the present cases are totally different, both factually and in principle, from Bennett v. United States, 356 F.2d 525, 174 Ct.Cl. 492, judgment vacated and case remanded, 385 U.S. 4, 87 S.Ct. 39, 17 L.Ed.2d 4 (1966), a case upon which plaintiffs also seek to rely.[4]

Our judgment in that case was ordered vacated by the Supreme Court in the light of the suggestion of the Solicitor General and upon that Court's examination of the papers filed in the case, which showed that the notice of adverse action with which plaintiff had been furnished failed to provide her with reasons sufficiently specific and detailed to enable her to join issue with her proposed discharge.

The memorandum of the Solicitor General, upon which the Supreme Court based its order vacating our judgment, states, in pertinent part, the following:

* * * We construe the applicable regulation [5 C.F.R. § 22.302(a) (1963 Supp.)]—requiring "specific and detailed reasons" including "all the facts needed to enable" the employee "to join issue with" the proposed discharge—as indicating that the government should, where possible, provide sufficient information to afford the employee the opportunity to rebut the case against him. * * * we do not disagree with Judge Davis' view that the additional documentary evidence upon which the charge was actually

based should have been made available to petitioner in order to remove any doubt as to her ability to meet the charges against her with more specificity than the submission of a general denial. * * * [Memorandum for the United States, Aug. 1966, pp. 6–7.]

Plaintiffs urge that the principle implicit in the above statement is equally applicable here—namely, that *all* information should have been made available in order to remove any doubt as to plaintiffs' ability to meet the charges against them. But this ignores a fact we have already noted—that plaintiffs were tried on the bases of the evidence presented and not on the bases of any information that was withheld. Nor could it be claimed that the evidence that was presented was in any sense inadequate insofar as furnishing plaintiffs either with knowledge of the charges against them, or with respect to the proof of such charges. The record leaves little room for doubt regarding plaintiffs' failure to perform their jobs satisfactorily. They were accorded every opportunity to meet the charges against them and the evidence sustaining those charges. Bennett v. United States, supra, can have no application here.

Plaintiffs also advance the contention that procedural error was committed through the introduction of unsworn evidence. The regulation upon which this claim is premised, § 22.401, 5 C.F.R. (1961 ed.), states, in relevant part, as follows:

(b) *Evidence.* Statements of witnesses shall be by affidavit, when practicable, and relative to the adverse decision.

We think that plaintiffs, in advancing this argument, ignore the fact that much of the testimony that was submitted, *e. g.,* the numerous abstracts taken from the criminal proceedings, did meet the substantive requirements of the regulation. The abstracts were certified copies

---

4. Plaintiffs' reliance upon this case was introduced by way of a motion filed in this court on October 18, 1966.

of testimony that had been obtained from Government witnesses and, as such, represent sworn testimony. The degree of reliability, which the regulation seeks to insure through the use of affidavits, is in no sense offended where certified copies of sworn testimony are offered instead. We see a distinction in name only. Plaintiffs also claim that the same infirmity, i. e., the failure to submit affidavits, stigmatizes the abstracted teletype reports and the Acting Customs Commissioner's statements, both being among the various documents that were submitted to the Civil Service Commission. Again we disagree. The regulation cited applies only to statements of witnesses; it does not impose its requirements upon documentary evidence, nor could it logically do so. The abstracted teletypes contained essentially the same information set forth in the respective charges that were made; the Acting Commissioner's statements were essentially "position" papers. Neither was evidence in the sense that it was relied upon by the Civil Service Commission to effect or justify the removals which are now in issue, and neither purported to be the statement of a witness.

■ Plaintiffs also attack the evidence on the grounds of relevancy. They allege that reliance upon the abstracts from the criminal proceedings was unduly prejudicial in that it fostered the impression that plaintiffs were intimately involved in the smuggling activities of Domenico Guarna. The argument ignores two pivotal considerations: First, that plaintiffs were in fact involved in Guarna's smuggling, though perhaps only through their own shortcomings rather than as actual participants in a deliberate scheme to defraud the Government; and, secondly, that their removals rested upon the inadequate inspections they made and not upon grounds of criminal conspiracy. Since each was charged with an improper inspection (involving either Guarna or his associate), the abstracted testimony

of those who witnessed these inspections is clearly a relevant factor. Yet, even if we were to treat as suspect the evidence complained of, plaintiffs have not shown here, any more than they did below, that, but for such "irrelevant" evidence, the removal decisions could not have been sustained. On this point, the evidence is much to the contrary. Coughlin was dismissed because he falsely attested to a baggage examination—a fact which was not only uncontroverted, but admitted. Plaintiff Goodman was dismissed because the 100-percent examination he claims to have made failed to uncover the existence of *any* contraband merchandise in a shipment which the evidence revealed to be "loaded." Plaintiff Cohen was dismissed because his examination failed to include at least one of the trunks that accompanied Guarna on September 25, 1956, and because he denied, under oath, any familiarity with Guarna. The basis of dismissal was predicated in each instance upon a failure to perform the assigned task within the limits of proficiency that the Government had a right to demand. In plaintiff Cohen's case, his proven acquaintanceship with Guarna furnished an additional basis. Given these facts, one could hardly take issue with the conclusion reached, namely, that plaintiffs' removals would promote the efficiency of the Federal Service.

■ Particular objection is taken to the introduction of remarks made by the trial judge at the time that plaintiff Cohen's indictment was quashed.[5] (See finding 14(c).) Insofar as relevancy is concerned, these remarks are squarely in point. They encompass both of the factors charged against Cohen, i. e., his acquaintanceship with Guarna and the scope of the baggage examination that Cohen made. However, we feel that the limited probative value which such opinion evidence offers not only diminishes its utility in proceedings of this nature, but afflicts the record with potentially

---

5. This material was introduced only in the case of plaintiff Cohen. It does not form a part of the record in the case of Goodman or Coughlin.

prejudicial evidence. Although we do not condone the introduction of the challenged data, we must conclude its admission constituted harmless error. There is no indication that the remarks were relied upon; additionally, the testimony in the criminal proceedings (upon which the trial judge's comments were based) was likewise introduced as evidence before the Civil Service Commission, thus furnishing a proper factual basis to support the decision reached. We therefore decline to find error in this challenged evidence.

On the further question raised, that is, the delay which each of the plaintiffs encountered with respect to their hearings before the Civil Service Commission, suffice it to say that, absent any demonstrable prejudice resulting therefrom, no material procedural error may be found. The delay was due in large part to the criminal proceedings that had been undertaken by the United States Attorney's office—this office requesting that the Civil Service Commission's hearings be held in abeyance pending the disposition of the criminal actions involving Guarna and Inspector Lev. The propriety of such a delay was impliedly sanctioned in Finn v. United States, 152 Ct. Cl. 1 (1961). Undoubtedly the Civil Service Commission could have proceeded more promptly once these collateral actions had terminated (approximately 11 months intervened), but its failure to have done so did not impair any legal right nor were plaintiffs prejudiced in any manner.

By way of final argument, plaintiffs take issue with the penalty received. It is claimed that the decision to remove them from their positions was unduly harsh and quite beyond the scope of reasonable corrective action. This harshness, it is alleged, serves to underscore the fact that their dismissals were prompted not by the conduct specified in the charges, but upon the employing agency's unproven supposition that plaintiffs had participated in a smuggling conspiracy. If true, this would clearly warrant avoidance of the administrative

actions. See Shadrick v. United States, 151 Ct.Cl. 408, 430 (1960); Wittner v. United States, 76 F.Supp. 110, 110 Ct.Cl. 231 (1948). But the difficulty plaintiffs face in this regard is that they have not shown their removals—when appraised *only* in terms of the conduct set out in the charges—to have been contrary to any regulation dictating a lesser penalty. Plaintiffs do point to a guide, entitled "A Guide for Use in Considering Appropriate Penalties for Disciplinary Offenses Committed by Customs Employees," upon which each relies to bolster his claim. This guide was not in effect at the time plaintiffs were first removed from their positions but, assuming its applicability nevertheless, it fails to prescribe a standard sufficiently restrictive to limit the removal discretion ordinarily reposed in the employing agency. Among the offenses therein listed is the following:

11. False statements, misrepresentations, or fraud in completing official documents, such as applications, qualifications, statements, and leave records. (Apparent oversights and errors, where satisfactorily explained may be excused if not disqualifying[.])

The above-cited offenses, which we regard as pertinent to the charges made and the evidence produced, carried the following range of penalties: "Official reprimand, or 5–10 days' suspension, or removal (depending upon employee's record and explanation)." Given as broad a discretionary base as this, we cannot label as arbitrary an administrative determination which chose the greater rather than the lesser penalty. De Nigris v. United States, 169 Ct.Cl. 619 (1965). To do so is to test the administrative action not in terms of regulation, but in terms of our own judgment in the matter. This we cannot do. The function of a reviewing court (in this area) is to insure substantial compliance with pertinent statutes and regulations and to guard against arbitrary or capricious action. It may not trench upon a properly arrived at executive decision, not even one one involving the sanction of

dismissal. See Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900).

## SUMMARY

The record in these cases fails to disclose either procedural error or arbitrary administrative action. The sanction of dismissal, while probably appearing harsh, is a legitimate exercise of executive discretion which rests upon evidence substantial in nature and derived from a fundamentally fair hearing. We therefore hold that plaintiffs are not entitled to recover and their petitions are dismissed. With respect to defendant's motion to amend its pleadings, this we have denied for the reasons noted supra (see footnote 3).