Bennett, Judge,
delivered the opinion of the court:
In this military case plaintiff asks us to void the action of the Secretary of the Air Force in accepting his tender of resignation, which was submitted on May 26,1967, and finally approved effective July 31 of the same year. Plaintiff was honorably discharged. Pie asserts that the Air Force violated applicable procedural regulations but, fundamentally, that coercion and duress practiced upon him by his commander induced him to resign against his will. For the reasons discussed below, we conclude that the plaintiff’s motion for summary judgment should be denied and the cross-motion of defendant United States for summary judgment should be allowed. The petition is dismissed.
Prior to the effective date of his resignation, plaintiff was a first lieutenant in the United States Air Force Reserve. Plaintiff had been awarded a commission as a second lieutenant upon successful completion of training in Officer Training School on November 10, 1965. Thereafter, he enrolled in a course of navigator training which he did not complete, electing to seek “self-initiated elimination” for personal reasons.
Plaintiff’s most serious difficulties with the Air Force awaited him at his next duty station. Detailed to a satellite activity of the 1100th Air Base Wing located at Travis Air Force Base, California, plaintiff embarked upon what he hoped would ultimately become a strong administrative specialty as an Armed Forces Courier Service officer. Such courier officers commonly are assigned to effect timely and *355 secure transportation of classified material among units of tbe armed forces. We gather from the affidavit and exhibits before us that plaintiff needed a top secret security clearance for this assignment. During the course of 1966 and the early months of 1967, several facts came to the attention of his local command which called into question his fitness to serve as a courier officer. In 1966 plaintiff, while in charge of a detail receiving a shipment of classified material, temporarily misplaced a confidential registered package. Although the package was promptly located, plaintiff received a letter of reprimand. In January of 1967 plaintiff was found by armed forces police in an “off-limits” establishment in San Francisco known as the “99 Club.” The police report recites that the premises had been placed off limits for “homosexual/ prostitution activities and unsanitary conditions.” When asked the reason for his presence plaintiff is said to have replied that he liked to frequent “off-beat” establishments.[1] The report was addressed to the attention of plaintiff’s local command. Additionally, in May of 1967 accusations were leveled against plaintiff by an airman involving alleged homosexual advances. The record indicates that an article 35-62 investigation followed, but was dropped when it developed insufficient evidence to warrant further personnel action. The accuser was subjected to a bad conduct discharge in June 1967 for reasons not here relevant. Finally, plaintiff took it upon himself to advise another airman concerning the nature of conscientious objection to the Vietnam conflict. Plaintiff admits this much, but denies that he ever advocated such a philosophy himself. He was also said to have expressed views about marijuana which were unacceptable to his superiors.
Because of these circumstances, the Armed Forces Courier Service detachment ended plaintiff’s tenure as a courier officer, and effected his transfer on a loan basis to the host *356 command 'at Travis Air Force Base, the 60th Air Base Group, Military Airlift Command (MAC). It is at this point that plaintiff first encountered a Lieutenant Colonel Pond, the commander in charge of the headquarters squadron of the 60th Air Base Group. Lieutenant Colonel Pond utilized plaintiff as a general administrative assistant for the remainder of his active duty period in the Air Force. Plaintiff claims he was given demeaning assignments designed to punish him for unorthodox views and to encourage him to quit and that he was the subject of malicious gossip. He required the help of a psychiatrist to overcome these problems.
Plaintiff’s affidavit tells us that during the time he served under Lieutenant Colonel Pond he was interviewed three times by that officer relative to his future in the Air Force. At the first of these meetings Colonel Pond gave him “a very strong suggestion” that he should resign his commission. Plaintiff says that he was greatly distressed and that in a fit of despair he did submit an informal letter of resignation. Colonel Pond would not accept the letter since it was not in the form specified by the applicable Air Force regulation, AFB, 36-12. Pond showed plaintiff the proper form, citing AFK, 36-12, paragraph 16m, as authority for discharge.[2] Plaintiff did not comply with this suggestion in the immediately following weeks, hoping still to salvage his military career. During this period plaintiff tells us that he executed his duties with a renewed determination to vindicate himself by hard work and came to entertain a guarded optimism concerning his continuing on active duty.
These hopes were shattered once and for all, we are told, when Colonel Pond, during the third interview,[3] advised plaintiff that if he did not submit his resignation as de *357 manded, an investigation under Air Force Regulation 35-62 [4] would be renewed. Plaintiff speaks of a serious decline in his health, together with great personal anxiety attendant upon this downturn of events. As stated, plaintiff’s tender of resignation is dated May 26,1967. Plaintiff used the form pointed out to him previously, changing only the authority for his resignation from paragraph 16m of AFR 36-12 to paragraph 62.[5]
Pertinent parts of the letter of resignation State:
1. 1,1/Lt Norman C. Murphy, FV3153617, under paragraph 62, AFR 36-12, hereby voluntarily tender my resignation from all appointments in the United States Air Force.
2. The reasons for the submission of this resignation are as follows:
❖ * ❖ ❖ H* # ❖
c. * * * Although I understand that, at this time, no action has been initiated under any Air Force regulation for my dismissal, I feel that the long standing investigation regarding a security clearance has severely prejudiced my career and may well continue to do so in the future. Therefore, I believe it in the best interests of both the Air Force and of myself that this resignation be accepted.
*358 3. I understand that, if this resignation is accepted, I will be honorably discharged from all appointments held by me.
Lieutenant Colonel Pond, in an undated endorsement to plaintiff’s foregoing tender of resignation, recommended approval of it, saying of plaintiff:
* * * He is of high intelligence but extremely naive. He has an outstanding ability to Staff but none to command. He entertains extremely liberal ideas and therefore is unable to lead. He is unable to gain the respect of his superiors or ¡his subordinates. I do not recommend him for an Air Force career and believe it would be in the best interest of the USAF to release him at this time.
Colonel Pond continued by commenting that he had 8 months in which to observe plaintiff’s performance of duty and, while commending plaintiff on work assignments requiring minimum contact with others, lamented his lack of courtesy, discretion, and general attitude. I-Ie said that plaintiff disrupted work progress ¡and caused personnel friction, interfered in matters that were not his concern, alienated all who came in contact with him, caused department heads to request that they be relieved of him, and entertained ideas and beliefs not consistent with the officer image. “His mannerisms and ideas have raised many questions by other officers at all levels, as to his suitability in the officer corps.”
It is significant to note before going further that on June 6, 1967, Colonel Pond also submitted an Officer Effectiveness Report (OER) for plaintiff covering the period between January 27, 1967, and June 5 of the same year. In the “comments” section of that report Pond included remarks quite similar to the recitals he had used earlier on the first endorsement of plaintiff’s tender of resignation.[6] Notwithstanding the reporting official’s narrative comments that in certain areas not requiring work with others plaintiff’s performance was outstanding, the entry in the “over-all evaluation” section is marked as “unsatisfactory.” Upon recommendation of the Air Force Board for Correction of Military Records, *359 the 'Secretary of the Air Force by memorandum dated August 13,1970, ultimately voided and removed this OER from plaintiff’s record because of the fatal inconsistency between the overall unsatisfactory evaluation and the narrative comments recognizing outstanding performance in certain as-spects of plaintiff’s duties. Thus, we will be called upon to judge the significance of the fact that some wording from a voided OER was included on an endorsement to the tender of resignation, which resignation was finally allowed.
Returning momentarily to the time of plaintiff’s resignation, plaintiff attaches some importance to the fact that the command which added a fourth endorsement and forwarded his tender to the ‘Secretary of the Air Force recommended that it be approved not under paragraph 62, as requested, but under paragraph 16m of AFR 36-12. It is evident that this recommendation was accepted, as plaintiff’s report of discharge, form DD 214, cites paragraph 16m of the applicable regulation as authority. We do not think it open to serious doubt that the command attaching the fourth endorsement appropriately changed the paragraph from 62 to 16m, since the wording of plaintiff’s tender of resignation asked for “resignation from all appointments in the United States Air Force,” and not simply for release from extended active duty.[7]
Plaintiff’s resignation, effective July 31, 1967, occurred less than 2 years from the date of his commission as a reserve officer, and more than 2 years prior to the expiration of his 4 years of initial obligated active service. Plaintiff tells us that he has taken his grievances before the Air Force Board for Correction of Military Records no fewer than four times, although the record before us contains the proceedings of only two such appearances. As hereinbefore noted, plaintiff did manage to convince the board that one OER should be voided. All other requests for relief were denied, including plaintiff’s bid for back pay and allowances for which he now brings this suit.
I
Plaintiff’s first theory of liability originates with the action of the command which attached a fourth endorsement to *360 bis tender of resignation. As previously noted, at this stage it was noticed that plaintiff bad asked that he be permitted to resign “from all appointments” in the Air Force, listing AFT?. 36 — 12, paragraph 62, as authorization. Since paragraph 62 does not authorize resignation from all appointments, but merely release from extended active duty, the endorsing command recommended to the next level (the Secretary of the Air Force) that resignation be allowed under paragraph 16m.
Plaintiff states that at the instant authorization for separation was changed from paragraph 62 to paragraph 16m, his resignation by operation of law became “involuntary.” He analogizes Iris tender .of resignation to an offer to enter a unilateral contract, which offer could be accepted by the offeree only by effecting his resignation (or release from active duty) upon precisely the terms embodied in his offer. As an afterthought in his reply to defendant’s cross-motion for summary judgment plaintiff adds the observation that an “involuntary” resignation, such as his, must be processed under other paragraphs of AFP 36-12 with opportunity for hearing and other safeguards.
We do not agree that plaintiff’s discharge became involuntary simply because an unknown administrative officer at a higher level in the chain of command changed the authorization reference from one paragraph to another, where this correction of an apparent clerical error obviously was calculated not to work any hardship or forfeiture on plaintiff, but merely to harmonize the regulation cited with the narrative substance of his tender of resignation. In short, plaintiff got what he asked for — “resignation from all appointments in the United States Air Force.”
Even if we were willing to say that plaintiff’s first theory has some legal merit, recovery would not follow. To sustain a recovery based upon administrative impropriety a plaintiff must demonstrate the manner in which he has been prejudiced thereby. Hart v. United States, 204 Ct. Cl. 925, cert. denied, 419 U.S. 1049 (1914); Haynes v. United States, 190 Ct. Cl. 9, 418 F. 2d 1380 (1969); OoTien v. United States, 177 Ct. Cl. 599, 369 F. 2d 976 (1966), cert. denied, 387 U.S. 917 (1967). Had plaintiff been released from active duty, *361 rather than resigning from all appointments, he still would not have been entitled to pay and allowances after the date of his release.
Plaintiff’s first contention must be rejected.
II
Next, plaintiff argues that the Air Force violated applicable service regulations in permitting him to resign under any paragraph of AFE. 36-12, since he had not completed his initial tour of obligated active duty. It is undisputed that at the time plaintiff accepted his commission, he incurred a 4-year active duty commitment. The 4-year period would have expired on November 9, 1969, or more than 2 years after the effective date of his resignation.
On this point we agree with the defendant. Under paragraph 14(a) of AFE 36-12, as in force at the operative time, in cases such as this one, tenders of resignation could be submitted for special consideration notwithstanding the active-duty service requirements set out in other directives.[8] Additionally, it is settled that “ [a] serviceman does not have a right per se to remain in service until the expiration of his enlistment.” Birt v. United States, 180 Ct. Cl. 910, 913 (1967) ; McAulay v. United States, 158 Ct. Cl. 359, 305 F. 2d 836 (1962), cert. denied, 373 U.S. 938 (1963). In the case at bar, the Air Force committed no error in discharging plaintiff prior to the end of his initial obligated active service.
III
Plaintiff also asserts that the Secretary’s action in accepting his tender of resignation must be voided, because it was taken on the basis of Lieutenant Colonel Pond’s undated first endorsement. We have heretofore noted that an OEE filed at about the same time by Colonel Pond, and which contained language in some respects similar to that which found its way into the endorsement, was declared null and void in 1970 by *362 the Secretary of the Air Force upon recommendation of the Air Force Board for Correction of Military Records. Plaintiff maintains that since the OER is void, so, too, is the endorsement and the Secretary’s action taken thereon.
Discovery of the legal meaning of these facts requires reference to Hankins v. United States, 183 Ct. Cl. 32 (1968). In that case an Air Force medical administrative officer, a career regular Air Force officer, tendered his resignation, allegedly due to coercion and pressure of two superiors. "When the two officers rotated to new duties at other stations, the source of pressure disappeared and plaintiff by letter sought to withdraw his tender of resignation prior to its final acceptance. Unfavorable OERs had been filed against Hankins while serving under the officers who later departed from his station. Officials in the chain of command forwarding his request to withdraw the resignation recommended disapproval in light of these unfavorable OERs, thus standing by initial recommendations in favor of plaintiff’s resignation. The plaintiff was ultimately discharged over his objection in accordance with his original tender of resignation.
In administrative proceedings the Air Force Correction Board agreed that the OERs were unjust and should be stricken, but nevertheless declined to authorize Hankins’ reinstatement. This court held that the Correction Board’s action in refusing reinstatement while striking the OERs was arbitrary and unfounded. 183 Ct. Cl. at 38. The court entertained the view that where an administrative decision (in that case, refusal of a request to withdraw one’s resignation) rests significantly upon improper material (unjust OERs, later relied upon in unfavorable endorsements), it may not be permitted to stand. Id.
Hankins is somewhat akin to the instant case, for in 'both controversies approval of a resignation request over allegedly tainted endorsements is attacked. But, that is where the parallel ends. In Hankins the endorsements recommending disapproval of plaintiff’s bid to withdraw his resignation referred specifically to OERs themselves, which were subsequently voided by the Correction Board because they “graded him unjustly and far too low.” 183 Ct. Cl. at 35. In this case, however, the endorsement did not refer to an OER itself which later was voided. The undated first endorsement *363 expressed sentiments reflected in the OER. However, such language did not contain the technical defect which later induced the Correction Board to void the effectiveness report. 'The board did not consider at all whether the narrative remarks therein were true or false. The OER was voided because in block V, Over-all Evaluation, an “x” appears in the space marked “unsatisfactory,” while narrative comments in block YII showed plaintiff’s overall performance to have been better. On the other hand, the undated first endorsement to plaintiff’s resignation request is not an OER or subject to the stringent procedures applicable thereto. The issue in the endorsement is not whether for OER purposes an officer’s performance is totally unsatisfactory; the question is solely that of whether, in the writer’s opinion, plaintiff’s resignation offer ought to be accepted by the Secretary in the best interests of the Air Force. In our view, comparing an endorsement to an OER is like comparing apples and oranges, unless the endorsement merely incorporates the defective OER by reference and recommends disapproval of a request to withdraw one’s resignation, as in Hankins. In the case at bar the endorsement does nothing more than to list Colonel Pond’s personal opinion as to whether in the best interest of the Air Force, plaintiff’s resignation should be permitted. We do not think he can be faulted for that. Accordingly, we decline to void plaintiff’s discharge on the ground that his tender of resignation was accepted based upon an illegal or “false” endorsement.
IV
Finally, plaintiff complains in an affidavit that his resignation was the product of coercion and duress, and, as such, a legal nullity. His petition refers to “mental distress.” His brief says that he was “bullied out” by Lieutenant Colonel Pond. We think that, reading the record as a whole, this assertion is of the essence to plaintiff’s claim even though his counsel has not chosen to brief the issue separately and distinctly from the other problems present in this case.
To make out a sufficient case for the avoidance of administrative action on the ground of duress, plaintiff must demonstrate the existence of three elements:
*364 * * * (1) tbat one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * * *. [Fruhauf Southwest Garment Co. v. United States, 126 Ct. Cl. 51, 62, 111 F. Supp. 945, 951 (1953).]
Although these rules first found expression in this court in a contract case, we have applied them time and again in back pay controversies. E.g., Dounias v. United States, post at 688; Christie v. United States, 207 Ct. Cl. 333, 518 F. 2d 584 (1975); Leone v. United States, 204 Ct. Cl. 334 (1974); Dorl v. United States, 200 Ct. Cl. 626, 633, cert. denied, 414 U.S. 1032 (1973).
Construed in the light most favorable to plaintiff, we do not think that the facts placed before us in plaintiff’s affidavit demonstrate that, objectively speaking, plaintiff had no alternative other than to resign his commission. On the contrary plaintiff could have stood firm and opposed the security investigation with which he says Colonel Pond threatened him. He still maintains that all accusations of wrongdoing against him were false. In these circumstances, a claim of duress cannot be sustained.
In summary, plaintiff’s resignation did not become involuntary nor was there a violation of regulations merely because the paragraph of AFB 36-12 under which he was discharged differed from the one he cited in his tender of resignation. Plaintiff suffered no legal injury and demonstrates no monetary prejudice from this clerical adjustment to conform to the reality of his request to resign “from all appointments in the United States Air Force.” The Secretary of the Air Force did not err in permitting plaintiff to resign before the expiration of his initial 'active duty obligation since exceptions for unusual circumstances permit such resignations and plaintiff described such circumstances in what he called at the time his voluntary resignation, heretofore quoted. The Secretary’s acceptance of plaintiff’s resignation was not voided retroactively when the Correction Board decided to remove plaintiff’s OEE covering the period between January 27 and June 5, 1967, for reasons unrelated to plaintiff’s fitness to serve. Finally, plaintiff has not demonstrated the presence of legally actionable duress in the matter *365 of Ms resignation, an issue raised for the first time in tMs petition filed 6 days short of the expiration of the statute of limitations and more than 4 years after he attempted to withdraw his tender of resignation. Because of these conclusions we find no occasion to rule on defendant’s alternative positions that the claim is barred by laches and estoppel, or on other issues raised by plaintiff. The plaintiff’s motion for summary judgment is denied. Defendant’s cross-motion for summary judgment is allowed. The petition is dismissed.

 Plaintiff's affidavit in support of Ms motion for summary judgment and in opposition to defendant’s motion, states: “It is true that I occasionally asked persons about their homosexual experiences. But, I never invited or encouraged such behavior. Had I done so, I am sure I would have been jailed instantly, what with all the investigation into my background. In fact, 1 had done my undergraduate thesis on homosexuality. After the Air Force, I did my doctorate dissertation on inherited biological traits that influence homosexual behavior.”

 This regulation, as then in force, provided in part:
“m. Other Miscellaneous Reasons. * * * '[0]fficers who are not eigible to tender their resignations under any criteria contained in * * * [other subpara-graphs of paragraph 16, AFP 36 — 12] may tender their resignations under this paragraph, if they can establish that their separation from the service will be in the best interest of the Air Force. Each resignation tendered under this paragraph will be considered on the individual merits of the case and normally will not be approved unless it is established that separation of the officer will be in the best interest of the Air Force. * *

 Plaintiff’s affidavit does not indicate what occurred during his second meeting with Lieutenant Colonel Pond.

 APR 35 — 62 of August 11, 1965, paragraph 3a, provides, in part:
“3. Policy :
“a. No person will be * * * retained in a military status in the Air Force if his * * * retention is not clearly consistent with the interests of national security. In order to maintain the effectiveness of the Air Force, prompt action must be taken to insure that no person is * * * retained in the Air Force who lacks the security qualifications necessary for membership in the Air Force.”
Paragraph 8a of the same regulation states that when facts come to the attention of an officer’s parent command indicating a potential security risk, the commander with clearance authority is to forward a request for investigation to the Office of Special Investigations (OSI).

 Paragraph 62 of AFR 36-12 differs from paragraph 16m in that the former provides only for release from extended active duty in the best interests of the Air Force, while the latter provides for outright resignation of all appointments. See note 2, supra. Paragraph 62 reads as follows:
“62. Release for Other Miscellaneous Reasons. Officers who are not eligible for release under any other criteria contained in this regulation may apply for release from extended active duty under this paragraph.
“a. Applications will be approved only if it is established that release of the officer will be in the best interests of the Air Force.
,“b. Applications will not be approved in any instance where the records indicate that elimination action under any other regulation is appropriate. (SDN 610).”

 While the endorsement was undated, the record supports the inference that it was completed and sent to higher authority within the chain of command between May 26, 1967 (date of tender) and June 6, 1967 (date of second endorsement).

 See note 5, supra.

 “a. Time Limitations. To preclude unanticipated and unprogrammed loss of trained personnel, officers who desire to tender their resignations under paragraph 16 * * * m may do so only within the time limitations specified below, to be effective as indicated. Exceptions may be made only when unusual circumstances exist which would warrant submission of resignations for special consideration.”