Savino L. GARCIA, Maximiliano, Cordova and Joe A. Martinez, Plaintiffs,

v.

I. SCHWARTZ, Acting Personnel Officer, Pueblo Army Depot, Pueblo, Colorado, Ludwig J. Andolsek, Robert E. Hampton, and John W. Macy, Jr., as the United States Civil Service Commissioner, Stanley R. Resor, as Secretary of the Army of the United States of America, and, the United States of America, Defendants.

Civ. A. No. 66–C–563.

United States District Court
D. Colorado.

April 17, 1968.

Levi Martinez, Pueblo, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty., for the District of Colorado, Richard T. Spriggs, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Plaintiffs seek judicial review of the decision of a Civil Service Commission adjudication sustaining their removals from positions of employment at the Pueblo Army Depot, Pueblo, Colorado. Plaintiffs Garcia and Cordova were employed at the Army facility as Material Segregators and Classifiers (WB–7: $2.37/hr.) and plaintiff Martinez was employed as a Fork Lift Operator (WB–5: $2.51/hr.). All three men were employed under and entitled to the protective provisions of the Veterans Preference Act, 5 U.S.C.A. 7511, 7512 (formerly 5 U.S.C.A. § 863).

Plaintiffs were removed effective April 30, 1964, after having been given 30-day written notices of intention to remove by the Army Depot. They were charged with "soliciting or receiving gifts in exchange for services rendered while in the performance of official duties" in violation of Army Regulation 600–50. The substance of the accusation was that they had requested gifts of lumber and canvas missile cover bags from a civilian con-

tractor doing work at the Depot; these gifts were to secure the cooperation of plaintiffs so that the contractor could perform his work. The charges were supported by affidavits of John K. Demas, the civilian contractor, and George E. Richards and Donald E. Ware, two of his employees. None of these affiants were employees of the Pueblo Army Depot or of any governmental agency.

Plaintiffs appealed their removals by the Army Depot to the Denver Region of the Civil Service Commission and subsequently to the Civil Service Board of Appeals and Review. Both administrative bodies affirmed the dismissals. Plaintiffs now seek a judicial determination that their removals were unreasonable, arbitrary, and capricious, and in violation of due process of law.

Plaintiffs maintain that they have been deprived of due process. The following specific contentions are made:

1. During the dismissal hearings and appeals, neither plaintiffs nor their attorney personally confronted and cross-examined the persons whose affidavits substantiated the charges of culpable conduct. Since plaintiffs informed the Denver Regional Commission of their desire to interrogate these persons, they allege that the absence of these affiants from the Commission hearing deprived them of their right to confront and cross-examine their accusers, in violation of due process.

2. Plaintiffs were not given copies of the affidavits substantiating the charges until the commencement of the Regional Commission hearing. They assert this prevented them from preparing adequately for the hearing and also constituted a denial of due process.

I. *Absence of the Accusing Witnesses from the Regional Commission Hearing*

The letters of intent to remove sent by the Army Depot (dated March 18, 1964) explicitly informed plaintiffs of the nature of the charges against them, of the existence of the affidavits upon which the charges were based, and of the iden-tity of the affiants. Following the dismissals by the Army Depot, plaintiffs requested a hearing before the Denver Region of the Civil Service Commission to appeal the dismissals. The letters requesting the hearings stated in part:

"A hearing is hereby requested by the employee at which time the Government will be required to produce the witnesses, Perry James, John K. Demas and George E. Richards, in order that they may be cross examined by the employee's attorney."

(Statements of Perry James are not concerned in this appeal. The letters requesting the hearing made no mention of Donald E. Ware, the third affiant.)

In its letter of September 14, 1964, the Commission notified plaintiffs that the hearing was set on September 17, 1964, and informed plaintiffs:

"You are invited to be present at that time to exercise your right of producing evidence and witnesses and to cross-examine witnesses of the employing agency on issues involved in this matter.

"The Commission does not have the power of subpoena and you will be required to make your own arrangements for the appearance of witnesses."

There is no evidence in the record, nor any assertions by plaintiffs, that plaintiffs directly requested the Pueblo Army Depot to produce the witnesses at the hearing, or that plaintiffs contacted the witnesses themselves in an attempt to secure their presence. It is to be assumed that these steps were not taken by plaintiffs.

The Commission's regulation then existing (1964) pertaining to the appearance of witnesses at Commission reviews of agency actions contained no provision for subpoenaing witnesses and made clear that appellants had to make their own arrangements. It provided:

"5 C.F.R. sec. 772.305 Hearings.

(c) Hearing procedures. (1) an appellant is entitled to appear at the hearing on his appeal personally or

through or accompanied by his representative. The agency is also entitled to participate in the hearing. Both parties are entitled to produce witnesses but as the Commission is not authorized to subpena witnesses the parties are required to make their own arrangements for the appearance of witnesses." [1]

■ The statutes (5 U.S.C.A. 7501, 7512) and regulations (5 C.F.R. sec. 772.301 et seq.) governing dismissals of Civil Service employees (including Veterans Preference Eligibles) make clear that a complete trial-type hearing with strict adherence to courtroom rules of evidence is not required in dismissal cases. Statements of witnesses are generally presented by affidavit; there is no inflexible requirement of compulsory presence of witnesses either for direct or cross-examination. See Deviny v. Campbell, 90 U.S. App.D.C. 171, 194 F.2d 876 (1952), cert.

den. 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952).

■■ Parties to a dismissal proceeding are permitted to utilize oral testimony at the hearing, in the form of cross-examination as well as direct testimony. But the law is clear that the initial burden of making timely and sufficient attempt to secure the presence of witnesses at a Commission hearing, either for direct or cross-examination, rests upon the party desiring the presence of such witnesses. 5 C.F.R. sec. 772.305(c); Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486 (1963), rhng. granted, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963). The order of the Supreme Court remanding *Williams* to the District Court [2] delineates the "initial burden" incumbent upon a party desiring the presence of witnesses. Such a party must either

---

1. This provision of the Commission's regulations was substantially amended by 31 F.R. 6569, May 3, 1966. It now provides:

 "(c) Hearing procedures. (1) An appellant is entitled to appear at the hearing on his appeal personally or through or accompanied by his representative. The agency is also entitled to participate in the hearing. Both parties are entitled to produce witnesses. The Commission is not authorized to subpoena witnesses.

 (2) An agency shall make its employees available as witnesses at the hearing when (i) requested by the Commission after consideration of a request by the appellant or the agency and (ii) it is administratively practicable to comply with the request of the Commission. If the agency determines that it is not administratively practicable to comply with the request of the Commission, it shall submit to the Commission its written reasons for the declination. Employees of the agency shall be in a duty status during the time they are made available as witnesses. Employees of the agency shall be free from restraint, interference, coercion, discrimination, or reprisal in presenting their testimony."

 The hearing involved in this action took place on September 17, 1964, well before the above amendment to the Commission's regulations. In any event, the amended regulation would not be pertinent

to this action since the affiants involved were not employees of the Pueblo Army Depot, hence not subject to that agency's control.

2. In the original opinion in Williams v. Zuckert, the majority stated:

 "Although amply notified in advance of the nature of the charges, the names of the witnesses whose affidavits had supplied the factual basis for his dismissal, and the date of the hearing, neither petitioner nor his counsel made any request, prior to the hearing, of the Air Force, of the Commission or its examiner, or of the witnesses themselves, for their appearance for cross-examination. The request for production of the witnesses, made only at the hearing by petitioner's counsel, was neither timely nor in conformity with the applicable regulations, which contemplate that the party desiring the presence of witnesses, either for direct examination or cross-examination, shall assume the initial burden of producing them."

 In the subsequent rehearing of *Williams*, the Supreme Court vacated this original opinion, since it determined that the District Court had never made certain factual conclusions necessary to deciding whether the petitioner had actually fulfilled this "initial burden." The guidelines enunciated for the District Court in the remand order are those stated above.

(1) Make timely and sufficient attempt to obtain the presence of the witnesses, or

(2) If under the circumstances and through no fault of his own the party is justified in failing to make such an attempt, the party must at least make a proper and timely demand on the dismissing agency to produce the witnesses, if they are under that agency's control.

 A request for production of witnesses made at the time of the actual hearing is not a timely request. Begendorf v. United States, 169 Ct.Cl. 293, 340 F.2d 362 (1965). And it is not sufficient to make request, prior to the hearing, either to the dismissing agency, or as in the case at bar to the Commission, where there has been no meaningful attempt to secure the presence of the witnesses through private contact with them. McTiernan v. Gronouski, 337 F.2d 31 (2nd Cir. 1964) (mere request to dismissing agency not sufficient); Brown v. Zuckert, 349 F.2d 461 (7th Cir. 1965) (mere request to Regional Commission not sufficient). See also, Brown v. Macy, 340 F.2d 115 (5th Cir. 1965); Jenkins v. Macy, 357 F.2d 62 (8th Cir. 1966) (recent decisions upholding dismissals despite absence of accusing witnesses at hearings, where dismissed parties failed to meet initial burden of securing their presence).

 There are unusual circumstances in which a party need not privately contact and request a desired witness to attend a hearing. Private contact attempts are not required where the party had no indication prior to the hearing that a potential witness's statements would be used against him. Powell v. Zuckert, 125 U.S.App.D.C. 55, 366 F.2d 634, 641 (1966). Nor is a private request necessary where such a request would obviously be fruitless. Hanifan v.

United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965). But absent such unusual circumstances, a party's lack of private efforts to secure the presence of desired witnesses is fatal to any later assertion of due process deprivation based on the absence of such witnesses from the hearing. Cohen v. United States, 369 F.2d 976, 177 Ct.Cl. 599 (1966).

Plaintiffs' sole efforts to secure the presence at the hearing of Demas, Richards, and Ware consisted of requests to the Commission that the witnesses be produced. Plaintiffs apparently did not request the Army Depot to produce the witnesses.[3] Furthermore, there is no evidence that plaintiffs attempted to secure the presence of the three affiants through private arrangements.

No basis exists for assuming that private requests, if made, would have been declined, notwithstanding that plaintiffs had been clearly informed and were aware that the statements of these men substantiated the charges against them.

 In view of this, we must conclude that plaintiffs have failed to meet the initial burden required of them under the applicable law, and their assertions of due process denial are therefore without merit.

II. *Plaintiffs' Failure to See Accusatory Affidavits prior to the Hearing*

Plaintiffs were not furnished copies of the affidavits on which the dismissal was based prior to the September 17, 1964 hearing before the Denver Regional Civil Service Commission. Plaintiffs did receive copies of these affidavits from the agency when they complained at the commencement of the hearing that they had not yet seen the affidavits. They contend that the failure to furnish these before the hearing constitutes a fatal deficiency.

 Neither the Veterans Preference Act nor the statutes and regulations governing the Civil Service Commission

---

3. A request to the Army Depot would appear inconsequential under the facts of this case, not only because it would not alone constitute a fulfillment of plaintiffs' initial burden, but also because the witnesses were not employees of the Army Depot and thus not under that agency's control or power to produce.

require that opposing parties in a dismissal action take the initiative in submitting evidence to the opposite side. The Commission does have certain regulations providing for the submission of relevant evidence to its representatives.[4] The apparent aim of these regulations is to expedite hearings by compiling the relevant evidence and making it available for scrutiny by the Commission, as well as the contending parties, prior to the actual hearing. This is in keeping with the concept that a Civil Service Commission hearing is informal and not a strict adversary proceeding. cf., 5 C.F.R. sec. 772.305. *Hearings.;* Deviny v. Campbell, supra. The provision for submitting relevant evidence to the Commission before the hearing need not be followed at the risk of having evidence barred if not so tendered. Such a rigid technicality would be contradictory both to the informal tenor of the Commission hearings, and to a specific regulation providing for introduction of evidence during the hearing.[5]

It is not apparent that the failure of plaintiffs to see the affidavits in question prior to the hearing resulted in some harm to plaintiffs. cf., Powell v. Zuckert, supra, (where the failure to supply the dismissed party with an accusatory affidavit prior to the hearing prevented him from summoning the affiant for cross-examination, since he had no indication that such a statement would be used as evidence against him). Here the record demonstrates that from the initial stages of the dismissal proceedings (letter of intent to remove,

sent to plaintiffs by agency on March 18, 1964) plaintiffs were clearly and explicitly informed of the charges against them, the evidence supporting these charges (primarily the affidavits in question), and the identity of the affiants. The investigative reports of the AMC-CID Office, submitted to the Personnel Officer of the Pueblo Army Depot recommending dismissal of plaintiffs, also paraphrased the statements of Demas, Richards, and Ware, setting forth all material elements of their affidavits. These investigative reports were part of the documentary evidence submitted to the Commission prior to the hearing by the agency and were thus available for review by plaintiffs.

Examination of the actual affidavits leads to the conclusion that they contain no material details or allegations which had not already been disclosed to plaintiffs in the charges and other correspondence sent to them, or in the documents submitted to the Commission as agency evidence prior to the hearing. Thus, the actual affidavits delivered to plaintiffs during the hearing disclosed no new information of which they were not already aware or to which they previously lacked access.

Examination of the record also fails to disclose independent evidence of a meaningful attempt by plaintiffs to secure copies of or access to the affidavits in question. One plaintiff does assert in a statement made shortly before the Commission hearing that he had verbally requested to see the affidavits at the time of dismissal and had been denied that right. [R.P.187].

4. "5 C.F.R. sec. 772.304. Evidence.
 "(b) Evidence. Statements of witnesses shall be by affidavit, when practicable, and relative to the adverse decision. It is the responsibility of both parties to the appeal to submit all evidence to the Chief, Appeals Examining Office, or to the original director, as appropriate.
 "(c) *Availability of evidence and representations.* A representative of the Commission shall discuss all relevant representations and evidence with both parties and make the representations and evidence available to them for review."

5. "5 C.F.R. sec. 772.305. Hearings.
 "(c) *Hearing procedures.* (3) A representative of the Commission shall conduct the hearing and shall afford the parties opportunity to introduce evidence (including testimony and statements by the appellant, his representative, representatives of the agency, and witnesses), and to cross-examine witnesses. Testimony is under oath or affirmation. Rules of evidence are not applied strictly, but the representative of the Commission shall exclude irrelevant or unduly repetitious testimony."

However, the Army Depot asserts that the affidavits had been at all times available for inspection by plaintiffs, but that plaintiffs had never availed themselves of the opportunity to see such evidence.[6]

In some of the correspondence to plaintiffs it appears that the agency offered to make available to them any "pertinent regulations and records" deemed by plaintiffs helpful to their case. The record contains no evidence of any correspondence from plaintiffs or their attorney to the agency or Commission requesting to see the affidavits. Plaintiffs' first objections that the affidavits were not in evidence were made in statements given to the Civil Service Commission investigator three days before the Commission hearing. These statements make clear that plaintiffs were aware that the dismissal charges were based primarily on the affidavits. This awareness belies any claim that plaintiffs were detrimentally surprised when the affidavits were allowed into evidence at the commencement of the hearing:

"Although the Government's case against me is largely based upon statements allegedly made by Mr. John K. Demas and Mr. Richards his foreman, these statements are not included in the Government's presentation on this appeal and are not part of the record in this matter. In this regard the Government has violated a basic and fundamental right of every citizen to be confronted with his accusers specially in such a case as this one when my livelihood is threatened and I am to be deprived to property (the means of making a living). I feel that in this regard the Government has not complied with the very basic principle of due process. I feel that the charges should be dis-

missed and that I should be reinstated for the Government's failure to include these statements as part of this record." Statement of Savino Garcia, September 14, 1964, (R.P.186). See also similar statements by plaintiffs Cordova (R.P.416) and Martinez (R. P.635).

The absence of evidence of a meaningful attempt by plaintiffs to secure these affidavits prior to the hearing, the lack of any new information in the actual affidavits which had not already unquestionably been made available to plaintiffs, and the submission of the affidavits to plaintiffs at the commencement of the hearing, all negative plaintiffs' contentions that they were unfairly surprised or injured by the procedures followed in the Regional Commission hearing.

### III. *Conclusion*

Our role in reviewing a case such as the one at bar is restricted. The agency has a discretion in ordering a dismissal. Hence, by the time the matter is heard by the Civil Service Commission and it is finally submitted to this Court, the judicial review of the action taken consists of an examination for the purpose of determining whether all of the procedural steps were followed out and whether the dismissals were arbitrary or capricious. Eberlein v. United States, 257 U.S. 82, 42 S.Ct. 12, 66 L.Ed. 140 (1921); Brown v. Zuckert, 349 F.2d 461 (7th Cir. 1965), cert. den. 382 U.S. 998, 86 S.Ct. 588, 15 L.Ed.2d 486 (1966). The record before us fails to disclose any serious procedural deficiencies or any deprivation of due process.

The fact that we might consider the proceedings somewhat technical and demanding a high degree of sophistication on the part of lawyer or

---

6. The hearing examiner in the Civil Service hearing (Denver Region) considered the question of whether the affidavits had actually been available to plaintiffs. He called the evidence on the issue conflicting, but stated that since the affidavits were submitted to plaintiffs at the commencement of the hearing, any possible procedural defect was thereby cured. The Board of Appeals and Review upheld this ruling. Thus, the factual issue has never been clearly decided.

participant does not furnish a basis for reversal. Nor does the fact that the Civil Service regulations themselves have failed to codify the more recent decisions constitute such a basis. The law is there if it is sought out and studied. It appears to us in passing, however, that the Civil Service Commission could well afford to furnish a more detailed and meaningful notice delineating the moves that must be made if a respondent is to secure the attendance of witnesses or bar consideration of the affidavits. At the same time, we are unable to perceive any substantial injury in the case before us.

Accordingly, the action of the Commission is affirmed and the case before us is dismissed. The Clerk will submit a judgment dismissing the cause of action.