Leonard H. JAEGER, Plaintiff,

v.

W. A. STEPHENS, as Area Manager of the United States Department of Transportation, Federal Aviation Administration, et al., Defendants.

Civ. A. No. C–2790.

United States District Court,
D. Colorado.

July 26, 1971.

---

Hindry & Meyer by Charles F. Brega and Loren L. Mall, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty. by W. Allen Spurgeon, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiff commenced this action under 5 U.S.C. §§ 701–706 (1967) for judicial review of a final determination of the United States Civil Service Commis-

sion Board of Appeals and Review upholding his removal by the Federal Aviation Administration. On the basis of the undisputed facts in the record, both sides have moved for summary judgment.

Plaintiff is a preference eligible veteran who was employed by the FAA at Broomfield, Colorado, as an air traffic controller until April, 1969. *See* 5 U.S.C. §§ 7501, 7511, 7512 (1967). On March 13, 1969, he was notified in writing by the agency that he would be suspended without pay for thirty days, effective March 17, 1969, because his retention in active duty status would "be detrimental to the interests of the Government." *See* 5 C.F.R. § 752.202(d) (e). At the same time, the FAA advised Jaeger that it proposed to remove him as unsuitable for continued government employment because of a demonstrated lack of "trustworthiness, reliability and stability." As stated in the hearing officer's report, the FAA cited three specifications to sustain its action:

1. On October 12, 1967, Jaeger intentionally made false and misleading statements under oath to Lloyd O. Yorker . . . who was conducting an official investigation for the FAA in regard to an incident that occurred on October 8, 1967 [in the FAA Control Tower at Peterson Field in Colorado Springs, Colorado]. (As a result, Jaeger was suspended for 21 days . . . without pay.)

2. On July 29, 1968, Jaeger deliberately disregarded an order of his supervisor while on duty in the IFR room of the Airport Control Tower . . . to conduct a radar precision approach of a military aircraft . . (As a result, Jaeger was suspended from active duty status without pay for 10 days [and] reassigned . . to the Jeffco Tower, Broomfield, Colorado.)

3. On March 9, 1969, Jaeger impersonated an official of the Federal Bureau of Investigation at a public place in Lafayette, Colorado, by representing himself as an agent of the FBI in-

vestigating the purchasing and selling of marijuana. In attempting this impersonation, Jaeger used his Federal Aviation Administration Identification card. Thereafter, he was arrested on the same date by the Lafayette Police and charged with drunkenness, entering a "stop" intersection, resisting an officer, and disorderly conduct. Following his arrest, it was reported that he was uncooperative, belligerent, and argumentative during booking at the office of the Boulder County Sheriff.

In the removal notice, Jaeger was advised of his right to make a written and oral reply to the agency charges within fifteen days.

Plaintiff submitted written replies on March 14, 1969, and on April 11, 1969, in which he denied each of the allegations of specification three and protested the FAA's reliance on the other two. On March 26, 1969, in the company of his attorney, Jaeger exercised his right to make an oral reply, and an informal hearing was held before three FAA officials: W. A. Stephens, the Area Manager who initiated the adverse action against Jaeger; Eugene W. Lovelace, Area Personnel Representative; and Jaime D. Serra, Assistant Area Manager. During that conference, Jaeger gave his version of the facts which formed the basis for specification three, was allowed an additional fifteen days to investigate the charges and make a written reply, and was fully advised of applicable procedures and his appeal rights in the event he ultimately was removed. Plaintiff then requested disclosure of the FAA's case against him; specifically, he asserted his right to the names of any witnesses to the incident who might later testify against him. Although the FAA officials denied that request perfunctorily, they told Jaeger that he would be permitted to confront and cross-examine any agency evidence used at an appeal hearing. After plaintiff's second written reply was received, the FAA notified him on April 15, 1969, that his employment would terminate on April 16, 1969, and again described his appeal rights.

Immediately upon removal Jaeger appealed to the FAA's Regional Office in Los Angeles, which held an evidentiary hearing on June 17, 1969. The hearing officer refused to re-explore the merits of specifications one and two, stating that he could determine only whether prior agency actions had been arbitrary or capricious. In his written findings he concluded they were not. To prove the remaining specification, the FAA introduced: (1) the statement of a Mrs. Houlder, in which she said that Jaeger approached her in Mike's Bar in Lafayette, Colorado, and, using a government identification card, represented himself as an FBI agent and proceeded to question her about possible drug traffic there; (2) the statements of two other persons in the bar who heard Jaeger make similar remarks; and (3) the corroborative testimony of Jose Jaramillo, manager of the bar. Plaintiff's defense consisted of extensive cross-examination of Jaramillo and a general denial of the charges. Although the FAA's evidence contained numerous contradictions and conflicts on several points, and although the hearing officer questioned Jaramillo's credibility, he found the evidence consistent on the issue of Jaeger's impersonation. The hearing officer accordingly sustained only that portion of the third specification. In conjunction with the other specifications, however, he concluded that Jaeger's removal would "promote the efficiency of the service" and sustained the FAA's action.

Thereafter, Jaeger appealed to the Denver Regional Office of the Civil Service Commission, which held an evidentiary hearing on specifications one and two on March 19, 1970; it also reviewed the record made during the FAA hearing on specification three. At the hearing, both Jaeger and the FAA offered extensive documentary and testimonial evidence. In written findings, the Commission again sustained Jaeger's removal after concluding that substantial evidence supported each specifica-

tion and that no procedural error had been committed by the FAA. Plaintiff took his case finally to the Board of Appeals and Review of the Civil Service Commission in Washington, which affirmed on the record. Having exhausted his administrative remedies as required by the Administrative Procedure Act, *e. g.*, Pine v. United States, 371 F.2d 466, 178 Ct.Cl. 146 (1967), plaintiff commenced this suit.

Plaintiff contends that the record is so replete with procedural error that he was denied the full and fair hearing required by due process. Specifically he asserts: the FAA did not accord him an effective and adequate oral reply prior to removal; it improperly failed to disclose the names of witnesses against him; it improperly relied upon his past record to sustain his removal; and its improper use of unsworn *ex parte* statements and failure to produce adverse witnesses at the hearing denied him constitutional rights of confrontation and cross-examination. Finally, Jaeger asserts that each administrative finding was arbitrary and capricious because unsupported by substantial evidence in the record. Defendants have contested plaintiff's claims and questioned our jurisdiction to review the agency action under the Administrative Procedure Act. We shall deal first with the defendants' jurisdictional contentions.

## I.

■ Defendants assert that the Administrative Procedure Act confers no jurisdiction upon us to review Jaeger's removal, as it was a matter "committed to agency discretion by law." 5 U.S.C. § 701(a) (2) (1967). We agree that "[t]he appointment to [or removal from] an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment," and that "[t]herefore, it is one of those acts over which courts have no general supervisory power." Keim v. United

States, 177 U.S. 290, 293, 20 S.Ct. 574, 575, 44 L.Ed. 774 (1900); *see also* Rosenman v. Levbarg, 435 F.2d 1286 (3d Cir. 1970); Benson v. United States, 421 F.2d 515 (9th Cir. 1969), *cert. denied*, 398 U.S. 943, 90 S.Ct. 1861, 26 L.Ed.2d 279 (1970); McGhee v. Johnson, 420 F.2d 445 (10th Cir. 1969); Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969). Defendants misapprehend the nature of that limitation, for it serves only to contract the permissible scope of review rather than to preclude it altogether. Thus, while we "cannot reevaluate evidence in support of removal," McGhee v. Johnson, *supra* 420 F.2d at 447, and "cannot undertake to pass on a plaintiff's qualifications for any given post or to compare them with those of an incumbent," Gnotta v. United States, *supra* 415 F.2d at 1276, we may inquire whether administrative officials abused their discretion or utilized impermissible procedures in removing an employee. As the Court of Appeals for the Tenth Circuit has stated:

Ordinarily the scope of judicial review of the action of the department in discharging an employee is limited to two main questions: (I) Were the procedural requirements of the statutes and regulations complied with; and (II) was the action of the department officials arbitrary or capricious or not supported by substantial evidence. Vigil v. Post Office Department of United States, 406 F.2d 921, 924 (10th Cir. 1969).

*Accord*, Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561, 565, 567 (1970); McGhee v. Johnson, *supra; see* Rosenman v. Levbarg, *supra*; Charles v. Blount, 430 F.2d 665 (7th Cir. 1970); *see generally* 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 28.16 (1958). Moreover, unless there is clear and convincing evidence of a contrary congressional intent, judicial review of the final agency action by an aggrieved person should not be foreclosed. *See* Abbott Laboratories v.

Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Defendants have presented nothing which persuades us that Congress wished to deny persons such as Jaeger their day in court.

■ Also, we find no merit to defendants' contention that the government's sovereign immunity precludes the present suit. As we stated in Crowther v. Seaborg, 312 F.Supp. 1205, 1219 (D. Colo.1970):

> There are two exceptions to the general rule. A suit is not barred by sovereign immunity if (1) it alleges that the actions of the officers challenged are beyond their statutory authority, or (2) it alleges that although acting within the scope of their authority, the powers exercised, or the manner in which they are exercised, are constitutionally void.

Equally persuasive is the analysis employed by the Court of Appeals for the District of Columbia to reject a similar contention in Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 873–874 (1970):

> Having found the provisions of section 10 of the Administrative Procedure Act applicable, the court is persuaded that the ancient doctrine of sovereign immunity has no application. The Fifth Circuit has held that the Administrative Procedure Act, where applicable, serves as a waiver of sovereign immunity. In Estrada v. Ahrens, 296 F.2d 690, 698 ([5th Cir.] 1961), that court said:
>
> > By providing judicial review in an action brought by "any person adversely affected or aggrieved by any agency action" Congress permitted suits which under established tests would certainly be barred as suits against the government . . . . *The Act thereby makes a clear waiver of sovereign immunity in actions to which it applies.* (Emphasis added.)
>
> It seems axiomatic to us that one must imply, from a statement by the Congress that judicial review of agen-

cy action will be granted, an intention on the part of Congress to waive the right of sovereign immunity; any other construction would make the review provisions illusory.

*Accord,* Adams v. Witmer, 271 F.2d 29, 34–35 (9th Cir. 1958); *see also* 3 K. Davis, Administrative Law Treatise § 25.01 et seq. (1958); Cahn & Cahn, The New Sovereign Immunity, 81 Harv.L. Rev. 929 (1968). Regardless of the approach used, it is clear that this action is not barred by the doctrine of sovereign immunity, for plaintiff has contested the validity of official agency action under the Administrative Procedure Act.

■ Finally, defendants contend that the United States is indispensable in this litigation and that plaintiff's complaint must be dismissed for failure to name it a party defendant. We disagree. As the court in Estrada v. Aherns, *supra,* noted:

> Because the waiver of immunity clears the way for recognition that the government is the real defendant, it is no longer necessary to complicate the problem of indispensable parties by continuing the fiction that the suit is not against the government. 296 F.2d at 698.

In recognition of that fact, the *Estrada* court then fashioned a test which excused a plaintiff's failure to name the United States if the agency or parties actually served possessed the ability and authority to provide the requested relief and if they could adequately protect the government's interests. *Id.* at 699; *see* Parker v. United States, 307 F.Supp. 685 (D.Colo.1969); *see also* 3A Moore's Federal Practice ¶ 19.15 (2d ed. 1970). As noted above, this suit is not barred by non-consent of the government. In light of that fact, and since officials of the FAA, the Civil Service Commission and the Department of Transportation are named as defendants and represented by the United States Attorney's Office, we think the test announced in *Estrada* has been met. Finding no jur-

isdictional impediment, we shall proceed to consider the matter on its merits.

## II.

 Plaintiff first contends that the procedure by which he was removed was constitutionally and statutorily deficient. It is well established that the Constitution permits a governmental agency to summarily discharge one of its employees as long as his removal is not accomplished in a "patently arbitrary or discriminatory" manner. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 896–897, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1962). Thus, the "due process [to which a governmental employee is entitled] is not necessarily judicial due process," Garvey v. Freeman, 397 F.2d 600, 612 (10th Cir. 1968), and so

[i]n this context we look to the administrative record to determine what was said and done in the informal hearings at any stage of the de novo proceedings conformed with the basic concepts of fair play, i. e., a full, albeit informal, discussion of the pertinent issues with the right of confrontation and cross-examination . . . . *Id.* (Citations omitted.)

Although some have argued that the rationale which favors extending pretermination evidentiary hearings to welfare recipients applies no less forcefully in the case of public servants facing possible discharge, Ricucci v. United States, 425 F.2d 1252, 192 Ct.Cl. 1 (1970) (concurring opinion of Judge Skelton), the majority in Goldberg v. Kelly, 397 U.S. 254, 263 n. 10, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) rejected that argument summarily, and we are bound by its decision. Due process, then, serves only to delimit the manner in which any hearing that is afforded a discharged employee may be conducted. Any other rights plaintiff may claim or enjoy exist only by virtue of congressional enactment. *See* Davis v. Berzak, 405 F.2d 642, 644 (10th Cir. 1969). It is clear, therefore, that the FAA violated none of plaintiff's constitutional or statutory rights when it refused to disclose its case to him prior to his appeal hearing, *see* Ricucci v. United States, *supra* 425 F.2d at 1254, and when it relied, in part, on his past record as grounds for removal, *see* McGhee v. Johnson, *supra* 420 F.2d at 448, for no such rights have been extended to public employees by Congress.

 Citing Ricucci v. United States, *supra*, Jaeger asserts that the FAA failed to provide him an opportunity to make an *effective* oral reply to the charges against him, as contemplated by applicable regulations. 5 C.F.R. § 752.202(b) provides:

The employee is entitled to answer personally, or in writing, or both personally and in writing. The right to answer personally includes the right to answer orally in person by being given a reasonable opportunity to make any representations which the employee believes might sway the final decision in his case, but does not include the right to a trial or formal hearing with examination or witnesses. When the employee requests an opportunity to answer personally, the agency shall make a representative or representatives available to hear his answer. The representative or representatives designated to hear the answer shall be persons who have authority either to make a final decision on the proposed adverse action or to recommend what final decision should be made.

Section 752–7 of the Federal Personnel Manual delineates further requirements of the oral reply:

2–5 Employee's answer

. . . . .

b. Oral reply. (1) *Designation of person to hear oral reply.* If the employee requests an opportunity to make an oral reply, he is entitled to be heard by an agency representative or representatives who are superior to him and have the authority either to take or recommend final action. This recommending authority need not be ex-

clusive (i. e., other officials may be requested to recommend the action they consider appropriate under all the circumstances), nor is it mandatory that the recommendation of the superior who receives the oral reply be the final recommendation submitted to the person or persons having authority to make the final decision on the proposed adverse action.

The *Ricucci* court concluded that those provisions by necessary implication required the agency representative to engage in "a general give and take discussion of the case," 425 F.2d at 1255, to aid the employee in the presentation of his evidence and to insure him some chance of success. *Id.* It also determined that the agency representative should be someone knowledgeable in personnel matters and someone with authority "to recommend what the final decision should be." *Id.*; *see also* Paterson v. United States, 319 F.2d 882, 162 Ct. Cl. 675 (1963). In *Ricucci*, the oral reply was made before a disinterested investigator from another branch of the agency, who had no expertise in personnel matters, who lacked authority to make any recommendation, and who did nothing more than operate a tape recorder to preserve plaintiff's comments. In contrast, Jaeger and his attorney engaged in a lively, general discussion of the case with the three FAA officials, all of whom apparently dealt with personnel problems as a matter of course, and one of whom was charged with making the final decision on his termination. Moreover, plaintiff was permitted additional time to forward a written reply and did succeed in having the drunkenness charge dropped. In these circumstances, we conclude the oral reply afforded plaintiff met the standards laid down by the *Ricucci* court, for short of guaranteeing plaintiff victory at the reply session, we cannot imagine what else the FAA could have done for him.

 The final attack plaintiff mounts on agency procedure concerns an alleged denial of his rights of confrontation and cross-examination that re-

sulted when the FAA failed to produce three of the four witnesses upon whom it relied to establish the third specification. The statutes, 5 U.S.C. §§ 7501, 7512 (1967), and regulations, 5 C.F.R. 771.201 *et seq.*, make clear that a trial-type hearing with strict adherence to courtroom rules of evidence is not required in dismissal cases.

> Statements of witnesses are generally presented by affidavit; there is no inflexible requirement of compulsory presence of witnesses either for direct or cross-examination. Garcia v. Schwartz, 283 F.Supp. 157, 160 (D. Colo.1968).

The party desiring the presence of witnesses must either (1) make a timely and sufficient attempt to obtain their presence, or (2) if he is justified in failing to make such an attempt, he must at least make a proper and timely demand on the dismissing agency to produce them, if they are under that agency's control. Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963) (per curiam); Garcia v. Schwartz, *supra* 283 F.Supp. at 161. Thus, until a party demonstrates compliance with those threshold requirements, he cannot complain of any attendant denial of procedural rights. *E. g.*, Bishop v. McKee, 400 F.2d 87, 88 (10th Cir. 1968); Cohen v. United States, 369 F.2d 976, 177 Ct.Cl. 599 (1966); Brown v. Zuckert, 349 F.2d 461 (7th Cir. 1965); Begendorf v. United States, 340 F.2d 362, 169 Ct.Cl. 293 (1965); McTiernan v. Gronouski, 337 F.2d 31 (2d Cir. 1964); Garcia v. Schwartz, *supra*. Since nothing in the record indicates that plaintiff made the requisite attempt to insure the presence of witnesses or that he made a proper and timely demand on the agency to produce them, it is doubtful that he met the initial burden imposed upon him by Williams v. Zuckert, *supra*. Even if we could somehow excuse that failing, it would not avail plaintiff, for the crucial factor here is that none of the missing witnesses were under the control of the FAA, and so it could not compel their attendance. The most that can reason-

ably be required of an agency in these circumstances is that it make a good faith attempt to persuade the witnesses to appear voluntarily, or, at least, that it not actively dissuade them from attending. See Williams v. Brown, 128 U.S.App.D.C. 12, 384 F.2d 981 (1967). The FAA met that burden here; the record shows that one witness did attend the hearing and was cross-examined by plaintiff and two of the others stated to an FAA investigator that they did not wish to become involved.

We conclude, on the basis of our examination of the record and review of applicable legal principles that plaintiff's procedural rights were fully protected at all stages of the administrative proceedings.

### III.

Plaintiff next contends that no competent, substantial evidence appears in the record to support any of the three specifications upon which the FAA based his dismissal.

We need not pause long to dispose of plaintiff's contentions that specifications one and two—that Jaeger made false and misleading statements under oath in connection with an FAA investigation and that he deliberately disobeyed an order from a superior— are not supported by substantial evidence. It is clear from the record as a whole that two versions of the incidents in question were before the hearing examiner, and that he merely accepted the agency's rather than plaintiff's. Well settled is the proposition that questions of credibility or of conflicts in the evidence are to be resolved by the hearing examiner, e. g., Fairbank v. Hardin, 429 F.2d 264 (9th Cir. 1970) (credibility); WEBR v. F.C.C., 136 U.S.App.D.C. 316, 420 F.2d 158 (1969) (conflicting evidence), and are conclusive unless supported by substantial evidence or clearly irrational. E. g., N.L.R.B. v. Southern Transport, Inc., 355 F.2d 978 (8th Cir. 1966). Moreover, just because another reasonable infer-

ence could be drawn from the same evidence does not mean the decision of the hearing examiner is vulnerable to attack. Pittsburgh & L.E.R. Co. v. United States, 294 F.Supp. 86 (W.D.Pa.1968). It is not our function to reweigh the evidence; nor are we permitted to substitute our judgment for that of the examiner We conclude from the record below and the arguments of the parties that substantial evidence supported the determinations on specification one and two.

Plaintiff contends that the only portion of the third specification ultimately established by the FAA—that he impersonated an FBI agent—was unsupported by substantial evidence because proven only by uncorroborated hearsay statements. We disagree. Hearsay evidence is admissible in administrative proceedings, see Peters v. United States, 408 F.2d 719, 187 Ct.Cl. 63 (1968); 5 C.F.R. § 771.210, as long as evidence upon which the final removal decision is based is both substantial and has probative value. E. g., Jacobowitz v. United States, 424 F.2d 555, 559, 191 Ct.Cl. 444 (1970); Willapoint Oysters, Inc. v. Ewing, 174 F.2d 676, 690 (9th Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949). While most courts agree that hearsay may have probative value whether or not corroborated, e. g., Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Jacobowitz v. United States, supra 424 F.2d at 561, there is some disagreement whether hearsay alone may be substantial evidence. In Willapoint Oysters, Inc. v. Ewing, supra, the Court of Appeals for the Ninth Circuit stated that

. . . since "substantial evidence" includes more than "uncorroborated hearsay" and "more than a mere scintilla," the findings, to be valid, cannot be based on hearsay alone, nor upon hearsay corroborated by a mere scintilla. Founded upon these requirements, the test whether evidence is "substantial," is whether, in the in-

dividual case before the court, there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Accord*, Camero v. United States, 345 F.2d 798, 170 Ct.Cl. 490 (1965); *see* Jacobowitz v. United States, *supra*; *cf.* McGhee v. Johnson, 420 F.2d 445, 446–447 (10th Cir. 1969). Other courts accept uncorroborated hearsay as substantial unless it is contradicted by direct, competent, legal evidence adduced at the hearing. *E. g.*, Cohen v. Perales, 412 F.2d 44 (5th Cir. 1969); American Rubber Products Corp. v. N.L.R.B., 214 F.2d 47 (7th Cir. 1954). Under either test it is evident that we must uphold the examiner's determination, for Jose Jaramillo did appear at the hearing for the FAA and corroborate the hearsay statements that Jaeger had impersonated an FBI agent. Together, they provided substantial evidence sustaining the FAA's charge in specification three.

### IV.

 Plaintiff's final assertion is that, even if we assume the FAA's charges were established, his removal would not "promote the efficiency of the service." 5 U.S.C. § 7501(a) (1967). We think our Court of Appeals answered this contention fully in Bishop v. McKee, 400 F.2d 87, 88 (10th Cir. 1968), when it stated:

> Finally, pointing to her prolonged and excellent record for competency as a civil servant, appellant contends that she should have been reassigned within rather than discharged from the service. The remedy necessary to promote the efficiency of the civil service is a matter peculiarly and necessarily within the discretion of the Civil Service and cannot be disturbed on judicial review absent exceptional circumstances not present here (Citation omitted.)

### V.

We conclude, then, that plaintiff suffered no deprivation of his procedural rights during administrative review of his removal, that each of the specifications cited by the FAA was supported by substantial evidence, and that the FAA did not act arbitrarily or capriciously, or abuse its discretion, when it removed him. Since there are no genuine issues of material fact remaining for trial, it follows that summary judgment may be granted. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 153–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).